THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAMSON ILI,

                Plaintiff,

     v.

AMERICAN SEAFOODS COMPANY, LLC, AMERICAN TRIUMPH, LLC, and DOES 1-10, on personam, and F/T AMERICAN TRIUMPH, Official Number 646737, her engines, tackle, apparel, furniture, etc., in rem,

                Defendants.

Case No. C07-1275MJP

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

      This matter comes before the Court on Defendants' motion for partial summary judgment on Plaintiff's liability claims. (Dkt. No. 17.) After the matter had been fully briefed (see Dkt. Nos. 27, 33), the Court heard oral argument on October 10, 2008. The parties filed supplemental briefing after Plaintiff completed several additional depositions and a vessel inspection. (Dkt Nos. 41, 44.) The Court has considered Defendants' motion, Plaintiff's response, Defendants' reply, the supplemental briefing, and other pertinent documents in the

**ORDER** - 1

record. For the reasons stated below, the Court GRANTS Defendants' motion for partial summary judgment.

**Background**

Plaintiff Samson Ili worked aboard the F/T AMERICAN TRIUMPH as a factory processor between 2003 and 2007. (Dkt No. 27 at 5.) On February 9, 2007, Ili fell while moving a plate of frozen fish, hitting his right knee on one of the poles supporting a conveyor belt and landing on his lower back. (Id. at 11.) Plaintiff asserts claims for (1) negligence based on the Jones Act, (2) unseaworthiness, and (3) maintenance and cure. (Pl.'s Compl. at 3-7.) Defendant seeks summary judgment on the first two claims arguing that Plaintiff's fall was solely the result of rough seas. (Dkt. No. 17.)

Prior to starting aboard the F/T AMERICAN TRIUMPH, Ili had never worked on a boat. (Bull Decl., Ex. 4.) During his three years working for ASC, supervisors aboard the ship gave Ili favorable reviews. (Id., Ex. 3.) He was identified as someone with "an outstanding attitude" who was "always dependable." (Id.) Ili's primary responsibility in the factory was to transfer frozen pans of fish from a hydraulic freezer to a conveyer belt. In Ili's workspace, the conveyer belt stood about three feet away from the freezer. To move the trays from the freezer to the belt, Ili stood with one foot parallel to the conveyor belt and the other foot at about 30 degrees off parallel facing the freezer. (Ili Dep. at 168:19-23, June 26, 2008.) While standing with his feet in place, Ili would twist to grab the freezer pan from one side and then move the pan to the conveyor belt on his other side. (Id. at 166:6-7, 167:8-23.)

The boat's movement made it difficult for Ili to maintain his balance. Ili stated that to maintain balance during rolls, "you usually spread your legs" in different directions based on the momentum of the roll. (Ili Dep. at 100:8-10.) Ili further noticed that "there is nothing that you can hold on or lean on" because removing the plates from the freezer requires the use of both hands. (Id. at 100:13-15.) During his time on the ship, Ili fell "more than a couple" of

times when the seas created unpredictable movements. (Id. at 103:14-25, 104:1.) While working, Ili would stand on fiberglass grating that elevated the worker above the wet metal deck. (Davis Dep. at 54:8-13, August 7, 2008.) The grating allows water to drain down to the deck rather than sitting on the surface and is "pretty grippy." (Id.) The grating is replaced as deemed fit by the factory management on the vessel. (Id. at 56:3-7.) There were no handrails in his work space; handrails are generally reserved for areas where there is a vertical drop. (Id. at 60:4-10.)

Ili could not lean up against the freezer while working because he needed space to pull the trays out of the freezer. (Ili Dep. at 163:21-25, 164:1-11.) Defendants concede that ice can build up on the grating near the freezers, but state that the ice only covers an area of approximately 3 inches in diameter. (Yamashita Supp. Decl. at ¶ 4.) Ili states that the ice was a "constant problem" on the freezer grating, but has not declared with specificity that ice caused his fall. (Ili Decl. at ¶ 6.)

Ili worked 16 hour shifts with only short breaks every four hours for meals and rest. Ili states that he complained about the long hours on the boat, though he never put in a request to transfer to another boat because he enjoyed the crew on the F/T AMERICAN TRIUMPH. (Ili Dep. at 73:12-25, 78:25, 79:1-4.) Plaintiff's response asserts that ASC is negligent for failing to investigate whether such long shifts contributed to injuries in the workplace. (Dkt. No. 27 at 7.) Defendants maintain that Ili has only ever vaguely stated that he was tired and that the length of his shift was the standard for the industry. (Dkt. No. 33 at 9-10.)

Ili's accident occurred around 3:45 in the afternoon on February 9, 2007, about 45 minutes before the end of his 16 hour shift. (Ili Dep. at 156:19-23.) His shift had started around midnight and he had taken brief breaks every four hours after starting work. Ili's description of the fall includes two movements. He said:

> I think the boat rolled from the side. I was pulling the pan out and I was getting ready to flip, and then all of a sudden this leg fold [sic] underneath my

**ORDER** - 3

> right one. And I was trying to plant this one to catch myself and it went up and I landed on my back.

(Id. at 151:12-20.) When asked why his left leg first went out from under him, Ili responded that "the boat rolled this way… it rolled side to side, you know." (Id. at 171:10-13.) He said he could not recall anything other than the boat's roll that may have contributed to his fall. (Id. at 173:10.) Ili further stated that he tried to shift his weight to his right leg, but it also slipped. (Id. at 177:21-24.) In his injury report form, Ili attributed his fall to losing his "balance when the boat rock [sic]." (Gaspich Decl., Ex. 2.) Later, when describing the incident on a doctor's report, Ili repeated the description of losing his balance after the boat rocked. (Id., Ex. 3.)

## Discussion

I.  Summary Judgment Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot

rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

   II. Negligence

Under the Jones Act, seamen are granted rights equivalent to those afforded to railway employees under the Federal Employers' Liability Act. See 46 U.S.C. § 688; 45 U.S.C. § 51; see also Gatreaux v. Scurlock Marine, Inc. 107 F.3d 331, 335 (5th Cir. 1997). To recover under the Jones Act, a plaintiff must demonstrate negligence on the part of the employer that "was a cause, however slight, of his injuries." In re Hechinger, 890 F.2d 202, 208 (9th Cir. 1989)(quotations omitted). In other words, a plaintiff must demonstrate "duty, breach, notice and causation." Ribitzki v. Canmar Reading & Bates, 111 F.3d 658, 662 (9th Cir. 1997)(citations omitted). Courts must be particularly cautious about granting summary judgment in Jones Act cases because they require a "very low evidentiary threshold." Radacz v. Rebecca-Irene F/T, 187 F.3d 638 (9th Cir. 1997)(citations omitted). However, the occurrence of an injury alone is insufficient to establish liability. The plaintiff must show that the employer's conduct fell below the required standard of care. Gautreaux, 107 F.3d at 335.

When describing the standard of care as it relates to slippery decks, courts agree that seamen are not entitled to an entirely slip-free deck. See Lieberman v. Matson Navigation Co., 300 F.2d 661, 662 (9th Cir. 1962). Rather, seamen are entitled to a deck that is not unreasonably slippery. Id. In general, a ship owner is not liable for requiring a seaman to work as the boat rolls during a storm, even if he falls during the roll. Matson Navigation Co. v. Hansen, 132 F.2d. 487, 488 (9th Cir. 1942)(referring to a sailor falling because of a wave sweeping across the deck).

In Ribitzki, the Ninth Circuit found that there were triable issues of fact precluding summary judgment on a plaintiff's Jones Act claim. 111 F.3d at 662-63. The plaintiff in Ribitzki had testified that he worked in a "cramped, slippery area" surrounding an open hatch

**ORDER** - 5

where there may have been some lubricant on the floor due to drilling and where there may have been mud. Id. Other crew members disputed Ribitzki's description. Id. The conflicting testimony in the record was sufficient to give rise to an inference that the ship owner's negligence might have been the "slightest" cause of the injury. Id. at 664.

Defendants point to the fact that in Ili's deposition, report to the ship, and doctor's intake form all cite rolling seas as the source of his fall. (See Gaspich Decl. at Ex. 1-3.) When Ili was asked if there were any other potential causes for his fall, he could not recall any. (Id.; Ili Dep. at 173:10.) Unlike the situation in Ribitzki where there was conflicting testimony as to the condition of the fallen seaman's workplace, Ili's description is the only one in the record describing the setting at the time of the accident.

Plaintiffs counter that there are several facts that create an issue as to the "slightest" cause of the accident. Specifically, they point to (1) the lack of handholds in Ili's workspace, (2) ice on the grating, (3) Ili's fatigue after an unreasonably long shift, (4) worn grating that had lost its traction, (5) ASC's failure to train Ili sufficiently, and (6) ASC's failure to perform a job hazard analysis on Ili's workspace. The Court will analyze each in turn.

  a. Handholds

In Radacz, the Ninth Circuit affirmed a district court's grant of summary judgment against a plaintiff who argued that the ship owner was negligent for failing to provide handholds in the galley. 187 F.3d 638; 1999 WL 515425 at *1. Because the plaintiff in Radacz would not have been able to reach any handholds while falling, the court concluded that no reasonable jury could find that the absence of handrails was a negligent cause of his fall. Id. Plaintiff asserts that Ili should have had handholds in his work area so he could brace himself as the boat rolled with the seas or, at least, ASC should have investigated

**ORDER** - 6

whether handholds were appropriate. Defendants respond that Ili could grab the plate freezer or conveyor frame to brace himself during a fall. (Dkt. No. 44 at 1.)

First, Plaintiff mischaracterizes the testimony of Captain Susol and Assistant Manager Yamashita. Plaintiff asserts that both state that handrails can be the "only way" a seaman can avoid falling. (Dkt. No. 41 at 2.) Yamashita responded affirmatively when asked if seamen ever had to "grab a handrail or something to stabilize" themselves during boat rolls. (Yamashita Dep. at 18:15-16.) Plaintiff thus focuses on handrails at the expense of other handholds Ili could have grasped. As Mr. Davis's testimony makes clear, handrails are used on the boat in areas of the boat where seamen are at the risk of a vertical fall. (Davis Dep. at 60:4-10.) Plaintiff does not demonstrate that the standard of care should be otherwise.

Second, Plaintiff points to a sign located at one part of the conveyor belt that states "Danger: Keep Hands Clear" as proof that Ili could not have grabbed on to the frame of the belt while falling. (Dkt. No. 41 at 2; Bull Decl., Ex. 3.) Examining all the pictures provided, the Court agrees with Defendants that, if read as broadly as Plaintiff asserts, the warning sign would be a complete bar to a processor working at all in the area. (Dkt. No. 44 at 3.) The pictures that provide larger view of the area demonstrate that the warning is attached to a specific area of the conveyor belt near the rollers. (See Bull Decl. Ex. 3, Photo 3.) The other pictures provided further demonstrate that Ili had several possible handholds to brace his fall (Gaspich Decl., Ex. 6-8.)

Ili's description of the accident does not include any mention of handrails or handholds. (Ili Dep. at 151:12-10.) Plaintiff has failed to demonstrate how the absence of handrails in the area could have contributed the slightest cause to his accident. The photographic evidence before the Court demonstrates that there were several places in the

**ORDER** - 7

area Ili could have reached for to brace himself. (Gaspich Decl., Ex. 6-8.) The fact that none of those were formally designated as handrails is insufficient to create a material issue of fact.

### b. Ice Forming on the Grating

Plaintiffs assert that ice formed on the grating under the freezer and that this ice created an "unreasonably" slippery surface. See Lieberman, 300 F.2d at 662. While Ili has stated that ice was a "constant problem" on the deck grates, he has not declared that either his right or left foot slipped on ice on the day of the fall. (See Ili Decl. at ¶ 6.) Plaintiffs point to an accident that took place two and a half weeks before Ili's where another processor reported slipping on ice on the deck grating around the freezer for the inference that Ili's fall took place under similar circumstances. (See Yamashita Supp. Decl. at ¶ 4.) Plaintiff fails to demonstrate with any specificity whether the other accident took place on the same side of the freezer as Ili worked. (Dkt. No. 44 at 5.) Moreover, Assistant Factory Manager Tommy Yamashita stated that ice occurs only in a relatively small area adjacent to the freezer coils, where a processor would not normally stand. (Yamashita Supp. Decl. at ¶ 4.) Ili's assertion that this area is "close" to where he stood when he fell is not enough to create a material issue of fact. (Dkt. No. 41 at 4.)

### c. Fatigue

Ili claims that the extreme fatigue caused by the "needlessly" long shifts contributed to his fall. (Dkt. No. 27 at 21.) While working long shifts has been the basis for Jones Act liability where statutory authority controlled the maximum allowable shift length, neither party asserts that any such statute controls. See Elms v. Crowley Marine Service, Inc., 1997 AMC 835 (W.D. Wa. 1996). Plaintiff maintains that Ili will testify that he normally felt disoriented after about 12 hours of work, but does not point to any point in his deposition

**ORDER** - 8

where Ili stated that he was particularly tired at the time of the accident (14 hours into a shift). (Dkt. No. at 22.) Throughout his testimony, Ili maintained that he was able to complete 16 hour shifts, lifting up to 77 pounds of fish on each tray. (Ili Dep. at 108:6-10.)

Plaintiff has also failed to demonstrate that there is a material issue of fact concerning the relevant standard of care in the industry. <u>See</u> <u>Gautreaux</u>. at 107 F.3d 335. Plaintiff merely states that 12 to 14 hours is the standard for the industry, claiming testimony by ASC's Allan Davis supports this proposition. (<u>See</u> Dkt. No. 27 at 21.) However, Davis is consistent in his testimony that 16 hour shifts were standard in the industry. (<u>See</u> Davis Dep. at 66:4-6.) The vague statements in Captain Susol's deposition that longer hours can result in fatigue are not enough to create a material issue as to the standard in the industry. (Susol Dep. at 21:22, October 7, 2008.) In sum, Plaintiff has failed to create a material issue of fact with respect to Ili's fatigue at the time of the incident.

      d. Grating

A vessel is required to provide a workspace that is reasonably safe as determined by a prudent superior under the circumstances. <u>Matson Navigation Co. v. Hansen</u>, 132 F.2d 487, 488 (9th Cir. 1942). Defendants claim that ASC knew that the grating wore out, but had no policy regarding the grating's replacement. (Dkt. No 27. at 7.) They do not, however, point to any statement by Ili or ASC describing the state of the grating at the time of the fall. ASC states that the grating is replaced as deemed fit by the factory's management. (Yamashita Dep. at 111:23-25; Yamashita Decl. at ¶ 8.) Plaintiff points to pictures taken during the vessel inspection for the assertion that the deck grating was not always replaced when worn. (Dkt. No. 41 at 5; Bull Decl., Ex. 8.) The Court does not believe that these pictures establish

an inference that the grating was worn. Moreover, pictures of the grating taken recently provide little insight into the condition of the grating at the time of the accident.

Again, neither Ili nor any other declarant has made any statements about the condition of the grating at the time of the fall. Absent any such testimony or other evidence about the grating at the time of the accident, Plaintiff cannot maintain his burden showing that worn grating was the slightest cause of Ili's fall.

    e. Failure to train

Plaintiff argues that he was insufficiently trained on how to maintain his balance in rough seas. Plaintiff's only comparison in terms of the standard of care is his claim he should have been trained to keep one hand on the ship at all times. (Ili Decl. at ¶ 3.) Such a standard of care is, however, inapplicable because Ili needed both his hands to grasp the plates of fish.

Furthermore, Ili states he was never trained to use the conveyor belt as an emergency handhold and that, in fact, he was warned against grabbing on to the conveyor belt. (Ili Decl. at ¶ 4; Dkt. No. 41 at 3.) The training materials provided to the Court demonstrate Ili was warned about the conveyor belt specifically with respect to running nip points where belts and gears intersect. (See Bull Decl., Ex. 6 (Davis Presentation).) The warnings are specific to the moving parts in the area, not to the significant structure around the conveyor belt. (Id.) As the photographs of Ili's workplace demonstrate, there are numerous non-moving objects in the area that could be grasped to brace a fall (assuming, of course, Ili could plausibly let go of the pan of fish and find such a handhold in time). (Gaspich Decl, Ex. 6-8.) When asked what training seamen are offered in avoiding falls, Captain Susol replied: "It's just like, I suppose, what kind of training has anybody told you about going down the stairs in your office? I mean, it's the same thing." (Susol Dep. at 37:20-22.) Ili explained he knew how

**ORDER** - 10

maintain his balance by shifting his legs, Plaintiff has failed to demonstrate how the absence of any additional training could have been the slightest cause of his accident. (Ili Dep. at 100:8-15); In re Hechinger, 890 F.2d at 208.

    f. ASC's failure to complete job hazard analysis

Plaintiff relies on the Stoller declaration in support of the allegation that ASC was negligent due to its failure to perform job hazard analyses. (Stoller Decl. at ¶ 14.) The Court notes that Stoller's opinion has been presented after the deadline for expert disclosures has passed and, therefore, the Court ignores it in reaching this decision. Plaintiff provides no specifics about what procedures a prudent supervisor would take with respect to the job hazard analysis. There is simply no evidence in the record about what a job hazard analysis would actually show on the F/T AMERICAN TRIUMPH. Absent any evidence on the issue, Ili cannot avoid summary judgment on the basis that ASC never completed a job hazard analysis.

While Plaintiff has offered several arguments in opposition to Defendants' motion, the facts presented are quite straightforward: the ship rolled unexpectedly and Ili fell. (Ili Dep. at 151:12-20.) Ili attributed his fall to an unexpected roll when describing the accident in his injury report and his medical intake form. (See Gaspich Decl., Ex. 2-3.) Plaintiff has failed to show how Defendants' purported negligence could be a cause, however slight, of his injuries.

III. Unseaworthiness

To present a successful claim for unseaworthiness, Ili must show (1) that he is owed a warranty of seaworthiness, (2) his injury was caused by a piece of the ship's equipment, (3) that the equipment used was not reasonably fit for its intended use, (4) the unseaworthy

**ORDER** - 11

condition was the proximate cause of his injuries. Ribitzki, 111 F.3d at 664. A vessel need only be reasonably suitable for its intended use, it need not be equipped with the finest parts and equipment. Mitchell v. Trawler Racer, 362 U.S. 539, 550 (1960)(citations omitted). Like many Courts, the parties have analyzed the negligence issue simultaneously with the unseaworthiness cause. (See Dkt. No. 17 at 6.) Because unseaworthiness only refers to the ship's condition, the only factual issues in dispute for this claim are: (1) the absence of handrails, (2) the condition of the grating, and (3) the development of ice on the grating.

With respect to the issues of handrails, grating wear, and ice, the analysis is identical to the negligence analysis that appears above. Ili may be able to show defects in the boat, but he has not provided any statement showing a causal connection between the condition and his injuries. See Ribitzki, 111 F.3d at 664. In the absence of any such causal connection, Plaintiff cannot bear his burden on the unseaworthiness claim.

**Conclusion**

The Court is sympathetic to Plaintiff's injuries. Plaintiff was undoubtedly performing a strenuous and difficult job in a challenging work environment. An injury alone, however, is insufficient to establish liability under either a negligence or unseaworthiness theory. Plaintiff has failed to create a material issue of fact with respect to his liability claims. Therefore, the Court GRANTS Defendants' motion for partial summary judgment and it is hereby ordered that Plaintiff's liability claims are dismissed.

The clerk is directed to send a copy of this order to all counsel of record.

DATED this 4th day of November, 2008.

                                      s/Marsha J. Pechman
                                      Marsha J. Pechman
                                      United States District Judge.